# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas G. Bellwoar, Jr.,      :
           Petitioner      :
           :    No. 235 M.D. 2025
     v.      :
           :    Submitted: June 16, 2026
Pennsylvania Department of Banking      :
and Securities Commission,      :
           Respondent      :

BEFORE:    HONORABLE LORI A. DUMAS, Judge
                HONORABLE STELLA M. TSAI, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## _OPINION NOT REPORTED_

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                     **FILED: July 21, 2026**

Thomas G. Bellwoar, Jr. (Bellwoar) has filed an amended petition for review (Amended PFR) in our original jurisdiction, seeking declaratory and injunctive relief from the Pennsylvania Department of Banking and Securities Commission (Commission) on the basis that the Commission allegedly violated the Sunshine Act[1] when conducting a public meeting in May 2025. Currently before us are preliminary objections filed by the Commission. Upon review, we overrule the preliminary objections in part and sustain them in part.

---

[1] 65 Pa.C.S. §§ 701-716.

## I. BACKGROUND[2]

On May 29, 2025, the Commission held its regularly scheduled quarterly meeting. After some initial formalities, the Commission opened the floor to public comments but was informed by the Commission's deputy chief counsel that none would be forthcoming, because no one had sought advance permission to do so, as well as because no members of the general public were currently at the meeting. A lawyer, Michael Lowe (Lowe), then appeared and sought to make a comment regarding the proceedings. The Commission's counsel denied this request, because Lowe had failed in advance to notify the Commission of his intention to do so, as well as because counsel believed Lowe would actually be offering oral argument, rather than public comment, as Lowe was representing several parties at the hearing.[3]

Thereafter, the Commission proceeded through the matters listed on the meeting agenda. During the course of discussing two of those matters,[4] Department of Banking and Securities (Department) attorneys announced that the Commission would be entering a non-public executive session, pursuant to Section 708(a)(4) and (a)(5) of the Sunshine Act;[5] in each situation, the Commission subsequently returned

---

[2] We draw this section's substance largely from the factual averments Bellwoar made in his Amended PFR. *See generally* Am. PFR.

[3] Spcifically, Lowe represented the respondents in Commission Docket No. 240032, the names of which are listed *infra* in footnote 4. *See* Prelim. Objs., ¶ 6; PFR, Ex. B at 33-34.

[4] These matters were, respectively, an executive session for a litigation update and discussion of *Ethos Capital Management, Inc. Steven Toto*, Docket No. 230022 (SEC-OSC); and an executive session for discussion of *TitleMax of Delaware, Inc., TitleMax of Ohio, Inc., TitleMax of Virginia, Inc., TitleMax of South Carolina, Inc., TitleMax Funding, Inc., TMX Finance LLC, TMX Finance Corporate Services, Inc., CCFI Companies, LLC and All Successors or Predecessors in Interest, Affiliates, Subsidiaries, or Parent Companies, However Named*, Docket No. 240032 (BNK-OSC).

[5] 68 Pa.C.S. § 708(a)(4)-(a)(5).

to the public hearing, announced its intended disposition of the matter, and then unanimously voted to approve that disposition.[6]

On July 17, 2025, Bellwoar submitted a Right-To-Know Law[7] request to the Commission, through which he sought information regarding the Commission's disposition of matters that it had addressed at the hearings it had held beginning on August 1, 2017, through the date of his request. In response, the Commission provided Bellwoar with records that showed that the Commission had issued 46 decisions during that time period. The records also showed that all these decisions had been unanimous, as well as that the Commission had issued nearly all of the decisions after returning from a non-public executive session that had been initiated by a Commission attorney. In Bellwoar's view, this information indicated that the executive sessions were a "sham" that were "aimed at either concealing the Department lawyers' improper control over the Commission or, worse, from shielding the public from observing its public officials' lack of competence with respect to the sophisticated matters being decided by them." Am. PFR, ¶ 47.

Accordingly, Bellwoar filed the instant, six-count action with our Court. Therein, he asserts that the Commission[8] committed a litany of Sunshine Act violations through its handling of the May 29, 2025 meeting; requests declaratory and injunctive relief that confirms those assertions, declaring the Commission's actions at the meeting to be void *ab initio* and enjoining the Commission from committing future Sunshine Act violations; and seeks an award of costs and fees. In

---

[6] The Commission first voted to resolve the *Ethos Capital* matter via a consent agreement and order, and subsequently voted not to take any action regarding an administrative appeal that had been filed in the *TitleMax* matter.

[7] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[8] Bellwoar names the Commission as the sole respondent in this matter's caption, but then states in the body of his Amended PFR that he is also suing the Commission's individual commissioners in their official capacities.

3

response, the Commission has filed preliminary objections that are the subject of this opinion.

## II. DISCUSSION

We reorder and summarize the Commission's preliminary objections as follows.[9] First, the Commission contends that Bellwoar lacks standing to pursue this matter based upon harm allegedly suffered by Lowe. Second, the Commission relatedly states that Bellwoar has failed to assert that the Commission's handling of the May 29, 2025 meeting caused harm sufficiently severe to warrant invalidation of the dispositions issued at the meeting. Third, the Commission maintains that Bellwoar has failed to plead a viable Sunshine Act claim in any of the Amended PFR's counts, because (a) regarding Count I, the meeting was open to the general

[9] The following standards are relevant:

> In ruling on preliminary objections, this Court must "accept as true all well-pleaded material allegations in the petition for review and any reasonable inferences that [it] may draw from the averments." *Highley v. Dep't of Transp.*, 195 A.3d 1078, 1082 (Pa. Cmwlth. 2018). However, we are "not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review." *Id.* This Court should sustain preliminary objections only where "the law makes clear that the petitioner cannot succeed on his claim." *Id.* at 1083.
>
> "[W]here any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections." *Pa. State Lodge, Fraternal Ord. of Police v. Dep't of Conservation & Nat. Res.*, 909 A.2d 413, 416 (Pa. Cmwlth. 2006).

*M.T. v. Pa. State Police*, 298 A.3d 466, 469 n.5 (Pa. Cmwlth. 2023) (cleaned up).

Additionally, the Commission has demurred to Bellwoar's claims. *See* Pa.R.Civ.P. 1028(a)(4). A preliminary objection in the nature of a demurrer admits all well-pleaded facts and all inferences reasonably derived therefrom. *See Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010). The demurrer tests the legal sufficiency of the pleadings and "will be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted." *Id.*

4

public and the Sunshine Act does not require that the public be provided with virtual access to such a meeting; (b) regarding Count II, the Commission was not required to publish a meeting notice in a newspaper of general circulation that contained a hyperlink to a livestream of the proceedings; (c) regarding Count III, the Commission properly and lawfully entered into non-public executive sessions during the meeting; (d) regarding Count IV, the Commission's executive sessions during the meeting were not shams to improperly prevent public access to its deliberations; (e) regarding Count V, the Sunshine Act does not require preexisting, relevant litigation to exist in order for the Commission to enter into executive session during an otherwise public meeting; and (f) regarding Count VI, the Sunshine Act does not provide the public with the right to speak at Commission hearings. Finally, the Commission asserts that Bellwoar has misjoined the Commission's individual commissioners as respondents in this matter, because they are not named in the caption, as well as because there is no additional relief that Bellwoar could obtain against the commissioners in their official capacity that he cannot secure against the Commission itself. Comm'n's Br. in Support of Prelim. Objs. at 9-22.

## A. Lack of Standing

The Commission's preliminary objections regarding Bellwoar's standing are without merit. Traditionally, "the individual initiating the legal action must show that he is aggrieved by the matter that he seeks to challenge. To be aggrieved, the party must have a substantial, direct, and immediate interest in the outcome of the litigation." *Firearm Owners Against Crime v. City of Harrisburg*, 218 A.3d 497, 506 (Pa. Cmwlth. 2019) (cleaned up). "A substantial interest in the outcome of litigation is one that surpasses the common interest of all citizens in procuring obedience to the law. A direct interest requires a causal connection

5

between the asserted violation and the harm complained of. An interest is immediate when the causal connection is not remote or speculative." *Phantom Fireworks Showrooms, LLC v. Wolf*, 198 A.3d 1205, 1215 (Pa. Cmwlth. 2018) (cleaned up).

However, such "traditional standing requirements are applicable only where a specific statutory provision for standing is lacking." *Press-Enter., Inc. v. Benton Area Sch. Dist.*, 604 A.2d 1221, 1223 (Pa. Cmwlth. 1992). Of particular relevance here, Section 715 of the Sunshine Act authorizes "any person" to file suit based upon an alleged violation of the overarching statutory scheme. 65 Pa.C.S. § 715. This provision supersedes the generally applicable standing test and relieves individuals of the need to prove that they are aggrieved by the challenged matter in order to pursue relief; rather, the individual must establish only that they are a "person" in order to proceed with their legal action. *See Press-Enter., Inc.*, 604 A.2d at 1223 (construing identical provision in former unconsolidated version of Sunshine Act as both superseding traditional standing test and conferring standing upon "any person"). Bellwoar is a "person" for purposes of Pennsylvania law, *see* 1 Pa.C.S § 1991,[10] and therefore has standing to pursue this action.[11]

---

[10] Section 1991 of the Statutory Construction Act of 1972 defines "person" as "[i]nclud[ing] a corporation, partnership, limited liability company, business trust, other association, government entity (other than the Commonwealth), estate, trust, foundation or natural person." 1 Pa.C.S. § 1991.

[11] The Commission cites *Picone v. Bangor Area School District*, 936 A.2d 556 (Pa. Cmwlth. 2007) in support of its argument that an individual must aver "actual harm or prejudice" in order to state a legally viable Sunshine Act claim; in doing so, the Commission argues that the *Picone* Court held that "[c]ourts will not invalidate governmental actions taken at a meeting unless the violation was so significant that it undermined the purpose of the Sunshine Act." Br. in Support of Prelim. Objs. at 18. We do not dispute that courts have discretionary rather than mandatory authority to invalidate governmental actions based upon Sunshine Act violations, or that the exercise of this discretion is oftentimes tied to the severity of the harm suffered by a litigant as a result of those violations. *See Baribault v. Zoning Hr'g Bd. of Haverford Twp.*, 236 A.3d 112, 121 (Pa. Cmwlth. 2020). Even so, the Commission's reliance upon *Picone* is misplaced at this juncture **(Footnote continued on next page…)**

## B. Failure to State a Claim

Next, we agree with the Commission that Bellwoar has failed to state a legally viable claim in Count I. Bellwoar asserts in Count I that the Commission violated Section 704 of the Sunshine Act by failing to provide and publicize a hyperlink that would enable members of the general public to virtually attend the May 29, 2025 meeting. PFR, ¶¶ 49-53; *see also id.*, ¶ 16 ("The time and date of the Quarterly Meeting was listed on the Department['s] website, but a Microsoft Teams link for virtual attendees was not provided on the website or in the meeting agenda. While a dial-in number was provided, the public had no means to observe the meeting proceedings at the physical location as if they were attending in person."). Section 704, however, imposes no requirement that the general public be provided with such virtual access. Rather, this provision merely states: "Official action and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public unless closed under section 707 (relating to exceptions to open meetings), 708 (relating to executive sessions) or 712 (relating to General Assembly meetings covered)." 65 Pa.C.S. § 704. In other words, Section 704's requirements are satisfied as long as the public can attend an agency meeting in some manner, whether that is in-person or in another, substantially similar way. Count I therefore

---

for two reasons. First, as already discussed, *supra*, an individual does not need to show that they were aggrieved or harmed by an alleged Sunshine Act violation in order to have standing to file suit. 65 Pa.C.S. § 715. Rather, the harm (if any) suffered by a litigant in this context affects the *remedy* a court may elect to provide, *not* the litigant's ability to articulate a viable Sunshine Act-based claim. Second, we did not hold in *Picone* that violations of the Sunshine Act are actionable only in the event they improperly shielded governmental actions from the general public; instead, we merely noted "that official action taken at a later, open meeting cures a prior violation of the Sunshine Act." 926 A.2d at 563.

fails as a matter of law, because Bellwoar merely asserts therein that the Commission did not provide the general public with a certain method of access to the May 29, 2025 meeting, rather than that the meeting was entirely (and improperly) closed to the public.

We similarly agree with the Commission that Bellwoar has failed to state a legally viable claim in Count II. Bellwoar argues that the Commission violated Section 709 of the Sunshine Act by failing to publish a notice in advance of the May 29, 2025 meeting that contained a hyperlink to the livestream of the meeting. PFR, ¶¶ 57-63. We disagree. Section 709 states, in relevant part:

> (a) Meetings.--An agency shall give public notice of its first regular meeting of each calendar or fiscal year not less than three days in advance of the meeting and shall give public notice of the schedule of its remaining regular meetings. An agency shall give public notice of each special meeting or each rescheduled regular or special meeting at least 24 hours in advance of the time of the convening of the meeting specified in the notice. . . .
>
> (b) Notice.--With respect to any provision of this chapter that requires public notice to be given by a certain date, the agency, to satisfy its legal obligation, must give the notice in time to allow it to be published or circulated within the political subdivision where the principal office of the agency is located or the meeting will occur before the date of the specified meeting.

65 Pa.C.S. § 709(a)-(b). Per Section 703 of the Sunshine Act, "public notice" is defined as follows, in relevant part:

> (1) For a meeting:
>
> > (i) Publication of notice of the place, date and time of a meeting in a newspaper of general circulation, as defined by 45 Pa.C.S. § 101 (relating to definitions), which is published and circulated in the political subdivision where the meeting will be held, or in a newspaper of general circulation which has a bona fide paid circulation in the political

8

> subdivision equal to or greater than any newspaper published in the political subdivision.
>
> (ii) Posting a notice of the place, date and time of a meeting prominently at the principal office of the agency holding the meeting or at the public building in which the meeting is to be held.

*Id.* § 703. In other words, an agency satisfies Section 709's public notice requirements as long as it properly publishes and posts information regarding a meeting's time, date, and *physical* location; there is no concomitant requirement under Section 709 that such notice include information regarding virtual access to a meeting.

Next, we agree that Bellwoar has failed to state a viable claim in Count III. Bellwoar alleges in Count III that the Commission violated Section 704 of the Sunshine Act by entering into executive sessions during the May 29, 2025 meeting without providing sufficiently detailed explanations for why it was doing so and, instead, broadly invoking attorney-client privilege each time. PFR, ¶¶ 67-75. As noted, *supra*, Section 704 requires agencies to take all official action and deliberations at public meetings except, in relevant part, if the meeting has been closed for executive session. *See* 65 Pa.C.S § 704. Per Section 708(b) of the Sunshine Act: "The reason for holding the executive session must be announced at the open meeting occurring immediately prior or subsequent to the executive session." *Id.* § 708(b). Bellwoar admits that the Commission both announced that it was entering into executive session in advance of doing so and provided a reason for entering into executive session (attorney-client privilege) each time. PFR, ¶¶ 68-73. Given this, he has failed to state a viable Section 704 claim in Count III.

We come to a slightly different conclusion regarding Count IV. In Count IV, Bellwoar argues that the Commission violated Section 708 of the Sunshine Act in two ways: first, by holding executive sessions to discuss matters not

9

in active litigation, in violation of Section 708(a)(4); and, second, by entering into a sham executive session in order to defeat Section 704's open meeting requirement, in violation of Section 708(c). PFR, ¶¶ 78-83. The first part of this claim fails, as Section 708(a)(4) does not limit executive sessions to instances where an agency has been sued; rather, it permits agencies to enter into such sessions "[t]o consult with its attorney or other professional advisor regarding information or strategy in connection with litigation *or with issues on which identifiable complaints are expected to be filed*." 65 Pa.C.S. § 708(a)(4) (emphasis added). Thus, existing litigation is not a prerequisite for a legally valid executive session.

However, Bellwoar's assertion that the executive sessions were a sham may have merit. Bellwoar makes the following relevant averments in Count III:

> 68. Prior to the Commission entering its first executive session, [Department attorney] Korn stated that because public discussion of Docket No. 230022, "would result in a disclosure of information protected by the attorney[-]client privilege as well as the Pennsylvania Right[-]to[-]Know Law, [the] attorney-client communication is authorized by the Sunshine Act to be conducted in executive session."

> 69. Mr. Korn did not provide any information regarding the nature of the allegedly privileged or confidential content the Commission planned to discuss during the executive session, nor did he provide any explanation of why the attorney[-]client privilege or confidentiality warranted entering an executive session.

> 70. Following Korn's announcement, the . . . Commission entered an executive session that was wholly closed to the public during which it deliberated various issues related to Docket No. 230022 (SEC-OSC).

> 71. Prior to the Commission entering its second executive session [Department attorney] Geishauser stated that because public discussion of Docket No. 240032, "would result in a disclosure of information protected by the attorney[-]client privilege as well as the Pennsylvania

10

Right[-]to[-]Know Law, [the] attorney-client communication is authorized by the Sunshine Act to be conducted in executive session."

72. Mr. Geishauser did not provide any information regarding the nature of the allegedly privileged or confidential content the Commission planned to discuss during the executive session, nor did he provide any explanation of why the attorney[-]client privilege or confidentiality warranted entering an executive session.

73. Following Mr. Geishauser's announcement, the Commission entered an executive session that was wholly closed to the public during which it deliberated various issues related to Docket No. 240032 (BNK-OSC).

74. Mr. Korn and Mr. Geishauser used the exact same language to enter improper Executive Sessions for two different docket matters. The fact that they used identical language and their failure to provide any explanation for their statements further supports that the Banking Commission did not have a statutorily valid reason to enter the [e]xecutive [s]essions. Rather than describing the general topics the Commission intended to discuss and applying the statutory exceptions for attorney[-]client privilege and Right[-]to[-]Know Law confidentiality to the content of those topics, Mr. Korn and Mr. Geishauser merely parroted statutory language. By merely referencing statutes without applying them to the proposed [e]xecutive [s]essions' content, the . . . Commission failed to demonstrate that any [e]xecutive [s]essions were warranted.

PFR, ¶¶ 68-74. Bellwoar then incorporated these averments by reference into the claim he asserted in Count IV. *See id.*, ¶ 77. These averments are sufficient to establish a facially viable claim that the executive sessions were shams that violated Section 708(a)(4) by contravening the purpose of Section 704 of the Sunshine Act. *See Reading Eagle Co. v. Council of City of Reading*, 627 A.2d 305, 306-07 (Pa. Cmwlth. 1993) (in order to comply with the Sunshine Act, an agency must provide

11

sufficiently specific explanation for why it is electing to enter into an executive session).

Next, we agree with the Commission that Bellwoar has failed to state a viable claim in Count V. Bellwoar contends in Count V that the Commission violated Section 704 of the Sunshine Act by entering into executive sessions under false pretenses during the May 29, 2025 meeting. PFR, ¶¶ 86-92. This argument fails because, to reiterate, Section 704 simply requires that agencies take all official action and deliberations at public meetings except, in relevant part, if the meeting has been closed for executive session. *See* 65 Pa.C.S § 704. Furthermore, it is Section 708(c) of the Sunshine Act, rather than Section 704, that bars agencies from entering into sham executive sessions. *See id.* § 708(c).

Next, we agree with the Commission that Bellwoar has failed to state a viable claim in Count VI. Bellwoar maintains in Count VI that the Commission violated Sections 704 and 710 of the Sunshine Act by preventing Lowe from offering a public comment during the course of the May 29, 2025 hearing. PFR, ¶¶ 94-105. This allegation fails, because neither Section 704 nor 710 contains any language that pertains to public participation; rather, Section 704 mandates that official agency action and deliberations take place at public meetings with limited exception, while Section 710 simply states that "[n]othing in this chapter shall prohibit the agency from adopting by official action the rules and regulations necessary for the conduct of its meetings and the maintenance of order. The rules and regulations shall not be made to violate the intent of this chapter." 65 Pa.C.S. §§ 704, 710. Furthermore, though Section 710.1(a) of the Sunshine Act (to which Bellwoar does not cite or otherwise reference) *does* require a reasonable opportunity for public participation at public hearings, this provision *only* applies to political subdivisions' authorities,

12

boards, and councils, *not* Commonwealth agencies like the Department. *See id.* §
710.1(a).

### C. Misjoinder of Defendants

Finally, the Commission's preliminary objection regarding Bellwoar's
alleged misjoinder of the individual commissioners is without merit. This is for two
reasons. First, though Bellwoar did not name the commissioners as respondents in
the caption of his Amended PFR, it remains that he expressly identified each
commissioner as a respondent in its body. *See* Am. PFR, ¶¶ 5-10 (naming each
individual commissioner as a respondent and stating that each commissioner is being
sued in their official capacity). Bellwoar's failure to name the commissioners as
respondents in this matter's caption is thus a technical error that can be corrected via
amendment, rather than a proper basis for deeming those commissioners improperly
joined. *See Piehl v. City of Phila.*, 930 A.2d 607, 617 (Pa. Cmwlth. 2007)
(explaining that there is "[no] authority to support the proposition that if a [petition
for review] correctly identifies a [respondent] in [its] body . . . but fails to do so in
the caption, that the caption's designation is controlling. Where the correct party is
sued but under a wrong designation, . . . a correction to the party name should be
allowed").

Second, and notwithstanding the Commission's argument to the
contrary,[12] the commissioners may be sued in their individual, official capacities,
despite the fact that Bellwoar cannot secure additional relief in this matter against
these commissioners beyond that which he may secure against the Commission
itself. Generally speaking, our Court has original jurisdiction over civil actions
lodged "[a]gainst the Commonwealth government, *including any officer thereof,*

---

[12] We note that the Commission improperly predicates its misjoinder argument upon
inapplicable federal case law. *See* Prelim. Objs., ¶ 78; Br. in Support of Prelim. Objs. at 21-22.

*acting in his official capacity*[.]" 42 Pa.C.S. § 761(a) (emphasis added). In keeping with this, we have specifically held that "Commonwealth officials 'may be proper parties [to an original jurisdiction action] when their authority to implement or enforce a statute is in question *or when their own actions are at issue*.'" *Stedman v. Lancaster Cnty. Bd. of Comm'rs*, 221 A.3d 747, 759 (Pa. Cmwlth. 2019) (emphasis added) (quoting *Howard v. Commonwealth*, 957 A.2d 332, 335 (Pa. Cmwlth. 2008)). Here, the Commission fails to assert that the commissioners are not Commonwealth officers or officials. *See* Prelim. Objs., ¶¶ 75-79; Br. in Support of Prelim. Objs. at 21-22. Furthermore, Bellwoar clearly challenges the individual commissioners' executive session-related actions via Count IV, his only remaining claim. *See* Am. PFR, ¶¶ 68-84. Therefore, the commissioners are proper parties to this action with regard to Count IV.

### III. CONCLUSION

In accordance with the foregoing analysis, we overrule the Commission's preliminary objection to Bellwoar's standing. *See Press-Enter., Inc.*, 604 A.2d at 1223; 65 Pa.C.S. § 715. Additionally, we overrule the preliminary objection asserting misjoinder of the Commission's individual commissioners as respondents to this action. *See Piehl*, 930 A.2d at 617; *Stedman*, 221 A.3d at 759. We also overrule in part the Commission's demurrer to Count IV, to the extent that Bellwoar asserts therein that the Commission violated Section 708(c) of the Sunshine Act by entering into "sham" executive sessions during the course of its May 29, 2025 meeting. *See generally Torres*, 997 A.2d at 1245. In addition, we otherwise sustain the Commission's demurrers, dismiss with prejudice Counts I through III, V, and VI of the Amended PFR in full, and dismiss in part Count IV with prejudice, to the extent that Bellwoar asserts therein that the Commission

14

violated Section 708(a)(4) of the Sunshine Act by entering into "sham" executive sessions during the course of its May 29, 2025 meeting. *See generally id.* Finally, we direct Bellwoar to amend this matter's caption within 30 days, so that it properly identifies each individual commissioner as a respondent.


_____
**LORI A. DUMAS, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas G. Bellwoar, Jr.,      :
    Petitioner      :
            :  No. 235 M.D. 2025
    v.        :
            :
Pennsylvania Department of Banking :
and Securities Commission,   :
    Respondent    :

# **O R D E R**

AND NOW, this 21st day of July, 2026, it is hereby ORDERED:

1. The preliminary objections filed by the Pennsylvania Department of Banking and Securities Commission (Commission) regarding Thomas G. Bellwoar, Jr.'s (Bellwoar) standing and his joinder of the Commission's individual commissioners as respondents to this action are OVERRULED;

2. The Commission's preliminary objection in the nature of a demurrer to Count IV of Bellwoar's Amended Petition for Review (Amended PFR) is OVERRULED in part, to the extent that Bellwoar asserts in Count IV that the Commission violated Section 708(c) of the Sunshine Act, 65 Pa.C.S. § 708(c), by entering into "sham" executive sessions during the course of its May 29, 2025 meeting;

3. The Commission's preliminary objections in the nature of a demurrer are otherwise SUSTAINED;

4. Counts I through III, V, and VI of the Amended PFR are DISMISSED WITH PREJUDICE;

5. Count IV of the Amended PFR is DISMISSED WITH PREJUDICE in part, to the extent that Bellwoar asserts therein that the Commission violated Section 708(a)(4) of the Sunshine Act by entering into "sham" executive sessions during the course of its May 29, 2025 meeting;

6. Bellwoar shall amend this matter's caption within 30 days, so that it properly identifies each individual commissioner as a respondent.

_____

**LORI A. DUMAS, Judge**